**LANE CAPITAL MANAGEMENT, INC., Plaintiff–Counter–Defendant–Appellee,**

v.

**LANE CAPITAL MANAGEMENT, INC., Defendant–Counter–Claimant–Appellant.**

**Docket No. 98–9173.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1999.

Decided Sept. 22, 1999.

340

J. Christopher Jensen, New York, NY (Richard S. Mandel, Jonathan Z. King, Cowan, Liebowitz & Latman, P.C., New York, NY, of counsel), for Defendant–Counter–Claimant–Appellant.

Rose Auslander, New York, NY (Barbara A. Solomon, Fross, Zelnick, Lehrman & Zissu, P.C., New York, NY, of counsel), for Plaintiff–Counter–Defendant–Appellee.

Before: PARKER, SACK, and MAGILL *, Circuit Judges.

* The Honorable Frank J. Magill, Senior Judge of the United States Circuit Court for the Eighth Circuit, sitting by designation.

PARKER, Circuit Judge:

Defendant-appellant Lane Capital Management, Inc. appeals from an order of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) entered August 6, 1998, granting in part the motion for summary judgment by plaintiff-appellee Lane Capital Management, Inc., and enjoining appellant from using the service mark "Lane Capital Management," or any confusingly similar mark, in connection with its services on a nationwide basis.

Appellee sued appellant for infringement of appellee's service mark "Lane Capital Management." On appellee's motion for summary judgment, Judge Chin found that no genuine issue of material fact existed as to whether appellee's mark was valid and protectible, or as to whether appellant's use of the mark caused a likelihood of confusion in the marketplace. Judge Chin further found that appellant's unlawful use defense had been waived due to appellant's failure to plead it. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 15 F.Supp.2d 389 (S.D.N.Y.1998). After judgment was entered, appellant moved to amend its answer to include the unlawful use defense, but Judge Chin denied that motion.

On appeal, appellant argues that genuine issues of material fact remain as to whether appellee's mark is inherently distinctive and, hence, valid and protectible. Appellant also argues that Judge Chin abused his discretion in denying the motion to amend the answer to add the unlawful use defense, and that genuine issues of material fact exist on that defense. For the reasons set forth in the discussion that follows, we reject appellant's arguments and affirm the order appealed from.

## I. BACKGROUND

### A. *The Parties*

Paul Fulenwider founded appellee and is the firm's manager and owner. Appellee was incorporated in Delaware on December 23, 1993, and immediately began business as an investment advisor. Appellee manages three investment funds which have $200 million in equity. Investors in the funds include individuals and entities "from around the globe." Additionally, appellee manages three individual accounts: one for a wealthy individual, one for a foundation, and one unspecified. Fulenwider chose the name "Lane Capital Management" at the suggestion of his wife. Lane was his father's nickname and middle name, and is his son's middle name. Fulenwider also asserts that he chose the name because "it's like a narrow path or channel. It's a relatively straight and narrow path. You know, it can be a shipping lane, an air lane, or a bowling lane. And in the context of being a risk management type firm, the idea of having a channel or a path or a tightly controlled thing had a very interesting meaning."

Douglas C. Lane is the president and majority shareholder of appellant, which manages stock portfolios and provides investment advice for individuals. Appellant was incorporated in New York on July 6, 1994. Douglas Lane began soliciting clients the first week of July 1994 and began providing investment advisor services to clients on July 25, 1994. Appellant has 700 clients with portfolios or accounts valued at $700 million. At the suggestion of his wife, Douglas C. Lane chose the name "Lane Capital Management" because Lane is his surname and he wished to benefit from the good will he had built in his name over the course of his career as an investment advisor.

### B. *The Events Leading to the Suit*

Appellee first became aware of appellant in April 1996, when appellee applied to register as a foreign corporation in New York. Fulenwider contacted appellant in June 1996 and requested that appellant change its name. Appellant took the position that appellee should change its name.

On November 12, 1996, appellee applied to the U.S. Department of Commerce, Patent and Trademark Office ("PTO"), for a service mark for "Lane Capital Management" to be listed on the principal register.

## C. *The Suit*

Appellee commenced this action on February 14, 1997. Appellee alleged service mark infringement under 15 U.S.C. § 1125(a) and related federal and state claims. Appellant answered on March 24, 1997, raising a number of affirmative defenses, but not the unlawful use defense.[1]

On January 27, 1998, the PTO granted appellee's application for a service mark for the principal register for "financial services, namely investment management in the field of securities, commodities and other investment media. . . ." On February 11, 1998, appellee moved for summary judgment.

As relevant to this appeal, appellant raised two grounds in opposition to the motion. First, appellant contended that a genuine issue of material fact existed as to whether appellee's service mark was inherently distinctive. Appellant contended that the fact-finder could find that the purchasing public perceived appellee's mark to be primarily merely a surname. If the fact-finder did so find, then appellant's mark would not be inherently distinctive, and appellant would prevail on the infringement claim because there had been no showing of acquired distinctiveness. Appellant proffered three pieces of evidence in support of its argument that a genuine issue of material fact existed on this point. As an initial matter, appellant produced evidence that Lane is the 170th most popular surname in the United States and that in the New York City area there are almost 1,000 residential listings for individuals with the surname "Lane."

Appellant also proffered evidence that there are numerous companies in New York City, nationwide, and on the Internet, who use Lane in their business names. Specifically, appellant pointed to over 125 business listings in the New York City area for companies with the name "Lane"; to a trademark research report that indicates "many more" companies who use the word "Lane" as a trade name in connection with financial services, insurance, or related businesses nationwide; and, to five companies that do business on the Internet under the name "Lane." Finally, appellant alleged that it is a common industry practice for financial institutions to employ surnames in their trade names. With respect to this last contention, appellant produced no actual evidence that employing surnames is a common industry practice, and thus relied on the conclusion that such fact is common knowledge. *See* 9 Wigmore, Evidence § 2570 at 726 (Chadbourn rev. 1981) (in drawing conclusions, fact-finder may resort to facts upon which people "have a common fund of experience and knowledge, through data notoriously accepted by all").

Second, appellant argued that a genuine issue of material fact existed as to the unlawful use defense. According to appellant, if the fact-finder determined that appellee had held itself out as a investment adviser, then appellee's failure to register as an investment adviser with the Securities and Exchange Commission ("SEC") violated the Investment Advisers Act of 1940. As such, argued appellant, the use of the mark in commerce was unlawful and could not establish protectible rights.

## D. *Judge Chin's Ruling*

Judge Chin found that appellee's registered mark was inherently distinctive and that appellant's use of the mark would cause confusion in the marketplace. He

---

1. Appellant also counterclaimed for false designation of origin under 15 U.S.C. § 1125(a). On appellee's motion for summary judgment, Judge Chin dismissed the counterclaim. That portion of the ruling, as well as the resolution of the remainder of appellee's claims, are not disputed on this appeal and are, thus, not discussed further.

found that appellant's unlawful use defense was an affirmative defense that had been waived because it had not been pleaded; and, in the alternative, that appellant had failed to raise a triable issue on the defense. *Lane*, 15 F.Supp.2d at 394–400.

### E. *Motion for Reargument*

On August 10, 1998, appellant filed a motion for reargument or, "in the alternative, for an order pursuant to Rule 15 ... permitting [appellant] to amend its answer to plead an affirmative defense" of unlawful use. Judge Chin denied the motion, and appellant appealed.

## II. DISCUSSION

As noted, the two issues on appeal are whether Judge Chin properly granted summary judgment for appellee on the issue of the validity and protectibility of the mark, and the independent issue of whether Judge Chin properly prohibited appellant from amending its complaint to add the unlawful use defense.

In this context, a number of potential issues not contested on appeal bear mention. First, appellee did not assert at the summary judgment stage that its mark had acquired distinctiveness—secondary meaning—and that issue is not in the case.

Second, except in the context of the unlawful use defense, appellant does not dispute Judge Chin's finding that appellee was the senior user. Similarly, except to the extent of challenging the validity of appellee's mark in the first instance, appellant does not dispute that its subsequent use of the mark caused a likelihood of confusion in the marketplace, or that the issuance of the injunction, or its scope, was proper.

Third, appellant does not challenge Judge Chin's treatment of the mark as a registered one. As noted, the complaint alleged the infringement of an unregistered mark pursuant to 15 U.S.C. § 1125(a). *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct.

2753, 120 L.Ed.2d 615 (1992) (§ 1125(a) protects qualifying unregistered marks). Appellee's mark became registered during the pendency of the action and before appellee moved for summary judgment. Judge Chin, in ruling on the motion, afforded the mark all the protections of a registered mark, thereby effectively treating the action as one for infringement of a registered mark pursuant to 15 U.S.C. § 1114(1) rather than for infringement of an unregistered mark pursuant to § 1125(a). Appellant has not disputed that this approach was correct.

Fourth, while Lane Capital Management is the name of appellee's business, appellant has not argued that this is a case about trade names rather than service marks. The parties are in evident agreement that, other issues aside, Lane Capital Management was used as a *service mark* and properly registered as such. *Cf. Martahus v. Video Duplication Servs., Inc.*, 3 F.3d 417, 421–22 (Fed.Cir.1993) (distinguishing between registrable service marks and unregistrable trade names).

### A. *Standard of Review*

■ We review a district court's ruling on summary judgment de novo, taking all factual inferences in favor of the non-moving party. Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Assoc., L.P.)*, 153 F.3d 61, 67 (2d Cir.1998).

■ We review a decision to deny a motion to amend a complaint for abuse of discretion. *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.), *cert. denied*, — U.S. ——, 119 S.Ct. 592, 142 L.Ed.2d 534 (1998).

### B. *The Protectibility of Appellee's Mark*

#### 1. *Basic Principles*

■ The purpose of a mark is to identify the source of products—a word which

we use in this opinion as a synonym for goods and services—to prospective consumers. *See, e.g.,* 15 U.S.C. § 1127 (service mark is "any word, name, symbol, or device, or any combination thereof" used to identify and distinguish the services of one person from the services of another, and to indicate the source of those services).[2]

To prevail on an infringement claim, a plaintiff must establish that it possesses a valid, legally protectible mark and that defendant's subsequent use of a similar mark is likely to create confusion as to the origin of the product at issue. *See Pirone v. MacMillan, Inc.,* 894 F.2d 579, 581–82 (2d Cir.1990).

To be valid and protectible, a mark must be capable of distinguishing the products it marks from those of others. *See Two Pesos,* 505 U.S. at 768, 112 S.Ct. 2753 (citing 15 U.S.C. § 1052). There are five different categories of terms with respect to the protection of a mark: generic, descriptive, suggestive, arbitrary, and fanciful. The categories reflect both the eligibility for protection and the degree of protection accorded. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark. *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 143 (2d Cir.1997).

The five categories focus the inquiry on the distinctiveness of the mark. Fanciful, arbitrary, and suggestive marks are deemed inherently distinctive. Their intrinsic nature serves to identify a particular source of a product, so they will be automatically protected. Marks which are descriptive are not inherently distinctive, and a showing that the mark has acquired distinctiveness—"secondary meaning"—is required before protection will be extended. Generic marks are not protectible. *See Two Pesos,* 505 U.S. at 768–69, 112 S.Ct. 2753; *20th Century Wear, Inc. v. Sanmark–Stardust Inc.,* 747 F.2d 81, 90 n. 10 (2d Cir.1984) ("The connection between mark and source is assumed in the case of a suggestive or arbitrary term. Secondary meaning performs the role of establishing that connection . . . in the case of a descriptive term.").

The classification of a mark is a factual question. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1039–40 (2d Cir.1992). The factual issue presented is how the purchasing public views the mark. The fact-finder is not the designated representative of the purchasing public, and the fact-finder's own perception of the mark is not the object of the inquiry. Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is. *See Pirone,* 894 F.2d at 582 (while *Abercrombie* categories "can be useful" in the inquiry, establishing protectibility of a mark "depends ultimately on its distinctiveness . . . in the eyes of the purchasing public.") (internal quotation omitted); *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 74 (2d Cir.1988) ("[I]t is [consumers'] perception that determines whether a mark is descriptive or suggestive."); *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921) (L.Hand, J.)

2. "[I]dentical standards" generally govern trademark claims and service mark claims. *West & Co. v. Arica Inst., Inc.,* 557 F.2d 338, 340 n. 1 (2d Cir.1977); *see* 15 U.S.C. § 1053.

Except where otherwise noted, we make no distinction between the law governing these different marks.

("The single question, as I view it, in all these cases, is merely one of fact: What do the buyers understand by the word for whose use the parties are contending?"); *accord In re Mavety Media Group, Ltd.*, 33 F.3d 1367, 1371 (Fed.Cir.1994) ("To be sure, appellate judges are a part of the composite of the general public, but they represent only a tiny fraction of the whole, which necessarily encompasses a wondrous diversity of thought.").

■ Further, the relevant purchasing public is not the population at large, but prospective purchasers of the product. *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 699 (2d Cir.1961).

■ A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce. *See* 15 U.S.C. § 1115(a). Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive. *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 563 (2d Cir.1990). As a result, when a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of mark's protectibility by a preponderance of the evidence. *See id.*

■ In the particular context of inferring the view of the purchasing public, the fact of registration thus confers a procedural advantage on the registrant in an infringement action: the opposing party must overcome the presumption that the purchasing public perceives the mark to be inherently distinctive. However, the statute does not state that the certificate of registration is itself evidence of how the public actually views the mark, and we conclude that the certificate does not constitute evidence of this fact as such. *Cf. Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir.1996) (once

defendant comes forward with evidence from which fact-finder could conclude that registered mark is generic, plaintiff "cannot obtain any residual mileage from the registration of its trademark. The presumption of validity that federal registration confers evaporates as soon as evidence of invalidity is presented. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case.") (citations omitted).

### 2. *Surnames*

■ Marks that are "primarily merely surnames" constitute a specific subcategory of descriptive marks, in that they describe the fact that the named individual is affiliated with the firm. *See Pirone*, 894 F.2d at 583; 15 U.S.C. § 1052(e)(1), (e)(4), (f) (like descriptive marks, marks which are primarily merely a surname are unregistrable unless they have acquired secondary meaning); *815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir.1988) (noting that the surname need not identify a real person). Whether a mark is primarily merely a surname is a question of fact. *See In re Hamilton Pharm. Ltd.*, 27 U.S.P.Q.2d 1939, 1940, 1993 W.L 368803 (T.T.A.B.1993); *cf. Bristol–Myers Squibb*, 973 F.2d at 1039–40 (classification of a mark is a factual question).

■ A mark is primarily merely a surname if the primary significance of the mark to the purchasing public is that of a surname. *In re Hutchinson Tech., Inc.*, 852 F.2d 552, 554 (Fed.Cir.1988). In this context, "merely" is synonymous with "only," meaning that the question is whether the significance of the mark is "primarily only a surname." *See In re I. Lewis Cigar Mfg. Co.*, 40 C.C.P.A. 1072, 205 F.2d 204, 206 (C.C.P.A.1953). As stated in *In re Rivera Watch Corp.*, 106 U.S.P.Q. 145, 149, 1955 WL 6450 (Comm'r Pat.1955):

A trademark is a trademark only if it is used in trade. When it is used in trade

it must have some impact upon the purchasing public, and it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, and it is only that, then it is primarily merely a surname.

*Id., followed by Hutchinson*, 852 F.2d at 554.

Applying this principle, *Rivera Watch* noted that surnames such as "Reeves," "Higgins," and "Wayne" are primarily merely surnames whereas "King" and "Cotton" are not, because the latter have "well known meanings as a word in the language." *Id.* However, the mere fact that a word has a dictionary definition does not exclude the possibility that it is primarily merely a surname. *See In re Nelson Souto Major Piquet*, 5 U.S.P.Q.2d 1367, 1368, 1987 WL 123866 (T.T.A.B.1987) (dictionary reference to "obscure card game" did not rebut prima facie showing that "N. Piquet" was primarily merely a surname; affirming refusal to register).

Further, when the mark at issue is a composite mark consisting of personal names and additional words, the question becomes what the purchasing public would think when confronted with the mark as a whole. *Hutchinson*, 852 F.2d at 554.

### 3. *Judge Chin Correctly Granted Summary Judgment for Appellee*

To defeat appellee's motion for summary judgment, appellant had to produce evidence from which the fact-finder could reasonably find that the mark was primarily merely a surname. Evidence that was merely colorable or not significantly probative was insufficient to meet this burden; the evidence must have been such as to permit the fact-finder at trial to "properly proceed" to a verdict for appellant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (defining "genuine" dispute) (internal quotation omitted). The party bearing the burden of proof (here, appellant) has no right to take the case to jury if a favorable verdict could only be the product of "surmise, speculation, and conjecture." *Calvert v. Katy Taxi, Inc.*, 413 F.2d 841, 844 (2d Cir.1969).

As noted, to defeat appellee's motion for summary judgment, appellant proffered evidence that Lane is a popular surname, that people named Lane have named their businesses after themselves, and that it is common knowledge that this practice is particularly common in the financial services industry. This evidence is insufficient to create a genuine issue for trial.

The evidence that a mark is a common surname, in the absence of a dictionary definition, is evidence towards establishing a prima facie case of unprotectibility in a registration proceeding. *Compare In re Harris–Intertype Corp.*, 518 F.2d 629, 631 (C.C.P.A.1975) (unusually large number of telephone directory listings established prima facie case that "Harris" was primarily merely a surname) *with In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 833 (C.C.P.A.1975) (listings in telephone directly cannot, standing alone, meet PTO's burden of showing that "Ducharme" is primarily merely a surname, particularly because there were relatively few listings). However, evidence that Lane is a common surname does not meet the burden of proving that it is primarily *only* a surname, especially since Lane—unlike, for example, Harris—does have a dictionary definition.

Appellant does not explain what it considers to be the evidentiary significance of the fact that businesses in New York City, nationwide, and on the Internet incorporate Lane in their names. The Federal Circuit has held that these types of listings can be admissible and probative of the strength of a service mark for the purposes of determining likelihood of confusion. *Lloyd's Food Prods., Inc. v. Eli's,*

*Inc.,* 987 F.2d 766, 767–68 (Fed.Cir.1993) (placement of service mark in yellow and white pages constitutes use of a service mark). The common use of a term can reduce its effectiveness in distinguishing products. *See Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743–44 (2d Cir.1998) (for strength of mark analysis, "Streetwise" was not "particularly strong" for maps even though it was inherently distinctive; other map manufacturers used "street," and "street" and "wise" were extensively used by manufacturers of other products). However, the issue in this case is not likelihood of confusion, but the inherent distinctiveness of Lane Capital Management. To rebut the presumption of inherent distinctiveness, rather than undermine the strength of the mark for likelihood of confusion purposes, the listings must show that the use of Lane in other business names renders it more likely than not that consumers view Lane Capital Management *as a surname.* The proffered listings do not reasonably permit this inference. Many of the businesses on the lists patently use Lane as a surname. For example, in the list of nationwide companies containing Lane,[3] a substantial number of the listings are people named Lane who are in business under their own name, or who have named their business after themselves (*e.g.,* Kenneth S. Lane MD, Linda Lane Insurance). It is obvious that Lane is used as a surname in that context. However, it is unclear—and appellant has not produced evidence that tends to show—how consumers will rely on those examples when they encounter marks like

"Lane Capital Management," in which Lane is not patently used as a surname.

For similar reasons, we see no genuine issue of material fact created by the evidence that it is common knowledge that financial service companies frequently employ surnames in their trade names. We basically agree with Judge Chin's analysis of this issue. *See Lane,* 15 F.Supp.2d at 395 & n. 7.[4] As Judge Chin noted, Lane has a readily recognizable dictionary meaning that other surnamed financial institutions lack, does not contain additional markers pointing to its surname significance (*e.g.,* " & Sons"), and does not dilute the dictionary meaning of Lane by including more than one apparent surname in the mark. Further, with little effort we could construct a competing list of financial services institutions that do *not* use surnames (Fidelity, Vanguard, Janus, and Citigroup come quickly to mind). It is not clear to us on which list Lane Capital Management would belong, and, more to the point, it is not clear to us how a factfinder would choose.

In sum, all that this evidence tends to show is that Lane has been used in business names as a surname, and that the use of surnames in business names has often occurred in the parties' industry. This highly circumstantial evidence appears to be somewhat probative of the ultimate fact that appellant must prove. It may help to contextualize and bolster other, more direct evidence of consumer perception. It does not, however, appropriately support a conclusion that Lane is primarily merely a surname. We hold that, by itself, this

---

**3.** Appellant does not explain how the appearance of certain trade names in an unspecified database constitutes a relevant "use" of these names. Nevertheless, appellee has not raised the issue, so we may assume that this listing is of the type described in *Lloyd's,* 987 F.2d at 767.

**4.** Judge Chin appeared to categorize the relevant consumers as "wealthy individuals and institutions desiring investment opportunities," and later referring to "sophisticated investors." *Lane,* 15 F.Supp.2d at 398, 400. In

its appellate brief, appellant simply refers to "consumers" of "financial institutions," thereby, apparently, taking prospective consumers as a whole and not consumers of any particular sophistication. Due to our resolution of this issue, we may assume without deciding that a fact-finder could take notice of the fact that financial service institutions commonly employ surnames in their names and of the fact that potential consumers of no particular sophistication know this to be the case.

evidence is too weak to create a genuine issue for trial.

Appellant's answer to these evidentiary gaps is that the record is "empty of any evidence that 'Lane' suggests anything other than a surname." This argument posits that—contrary to the assertion of Fulenwider that Lane relies on its dictionary definition to connote a "tightly controlled" approach to investing—Lane, in this context, could only have a surname significance because it could not possibly mean anything else. Even assuming that Fulenwider's view can be rejected as a matter of law, appellant's argument fails because it sets up a false choice between Lane as either a surname or a suggestive term within the mark as a whole. Appellant ignores the possibility that Lane in this context means nothing, and is merely a placeholder akin to "X Capital Management." In this context, the dictionary meaning of Lane need only be strong enough to negate its surname significance in the mind of prospective consumers; the dictionary definition need not itself displace that surname significance in their minds.

Perhaps luring appellant to the false conclusion that a triable issue can be created on minimal evidence are the various cases where we have categorized marks with no apparent reliance on evidence beyond the mark and the nature of the product itself. *See, e.g., Hasbro,* 858 F.2d at 75 ("Gung–Ho" suggestive of military action figure); *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.,* 857 F.2d 80, 82 (2d Cir.1988) ("Physicians & Surgeons" suggestive of skin creams and lotions); *Thompson Medical Co. v. Pfizer Inc.,* 753 F.2d 208, 216 (2d Cir.1985) ("Sportscreme" descriptive of "cream useful in connection with sports").

These cases mean little more than that in some cases factual questions may be put into dispute and resolved even on minimal evidence. These cases should not be read for the general proposition that a genuine issue of fact exists in every case once the mark and the nature of the product it marks are in evidence. Indeed, if the only evidence is the mark and the product, then the view of the purchasing public may be divined only if the purchasing public could have only one view, or if one competing view is dominant enough to permit a reasonable conclusion by the preponderance standard. *Cf. Rivera Watch,* 106 U.S.P.Q. at 149 (identifying five surnames whose status in the eyes of the purchasing public could not be doubted); *Feathercombs Inc. v. Solo Prods. Corp.,* 306 F.2d 251, 255 (2d Cir.1962) (noting that "ample" evidence supported conclusion that "Featherlight" as applied to hair rollers was descriptive, but also noting, *"We can conceive of no impression* which an observer would derive from seeing the word on such article except the impression that, comparatively speaking, the article was of very little weight.") (emphasis added, internal quotation and alteration omitted); *Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc.,* 297 F. 247, 248 (S.D.N.Y.1923) (L.Hand, J.) (holding "Fashionknit" to be descriptive of knitted clothing; "I have *not the least doubt* that it produces the effect intended; that the plaintiff expected its customers vaguely to understand that its clothes were knitted as fashionable clothes should be knitted.") (emphasis added), *aff'd,* 4 F.2d 1018 (2d Cir.1925) (per curiam).

By opposing appellee's motion for summary judgment, appellant seeks a trial on the disputed factual issue of how the purchasing public perceives the mark "Lane Capital Management." Appellant fails, however, because it has not proffered evidence from which a reasonable fact-finder could resolve the factual issue in appellant's favor. *See Anderson,* 477 U.S. at 248–50, 106 S.Ct. 2505. Every case is unique to its facts. In this case and on this record, we are unconvinced that a fact-finder could, without speculating, conclude that the primary significance of Lane Capital Management to the purchasing public is that of a surname. *Cf. Blisscraft,* 294 F.2d at 698–702 (reversing as clearly

erroneous district court's finding after bench trial that "Poly Pitcher" was descriptive of polyethylene pitcher; record was "devoid of any worth-while evidence" that purchasing public understood either that "poly" was synonymous with polyethylene or that the pitcher was made of polyethylene; district court's reliance on evidence from trade publications was erroneous because such publications did not reflect the knowledge of the purchasing public); *Mavety*, 33 F.3d at 1373–74 (holding that PTO failed to prove that term was scandalous and thus unregistrable; PTO relied on dictionary definition of disputed term, but dictionary provided alternative definitions; proof failed because of "the absence of evidence as to which of these definitions the substantial composite [of consumers] would choose").

■■■ Thus, Judge Chin determined correctly that appellant had failed to "present evidence to create an issue of fact as to the presumptive validity of plaintiff's mark." *Lane*, 15 F.Supp.2d at 395. However, Judge Chin then continued his analysis and concluded that the purchasing public "would not" view the mark as primarily merely a surname, and that the mark was arbitrary. *Lane*, 15 F.Supp.2d at 395–96. It appears that Judge Chin engaged in this additional analysis at least in part because it informed the subsequent issue of likelihood of confusion and, in particular, the issue of the strength of the mark. Because the likelihood of confusion issue is not raised on appeal, we need not go so far. We do, however, note that Judge Chin erred in determining, at the summary judgment stage, that the purchasing public "would not" view the mark as primarily merely a surname. Appellant failed to overcome a specific evidentiary burden that derived from a statutorily created presumption. Appellant's failure of proof does not mean that the purchasing public actually perceives Lane Capital Management to be inherently distinctive.

## C. The Unlawful Use Defense

■■■ The Investment Advisers Act of 1940, 15 U.S.C. § 80b–1, *et seq.*, requires investment advisers who hold themselves out generally to the public to register with the SEC. *See* 15 U.S.C. § 80b–3. As noted, appellant raised the defense that appellee held itself out generally to the public, that it failed to register with the SEC, that this failure rendered its use of the mark in interstate commerce unlawful and, thus, that its mark was unprotectable. Judge Chin found, and appellant does not dispute, that this defense is an affirmative defense which appellant bore the burden to plead and prove. We find that Judge Chin did not abuse his discretion in denying appellant's belated motion to amend its answer to add this defense.

Central to appellant's argument is that appellee had actual notice that appellant would raise the unlawful use defense, and that the matter was thoroughly developed during discovery. This contention is not supported by the record.

The issue of appellee's failure to register with the SEC was raised repeatedly throughout the case, but never in a context that would have alerted appellee to the unlawful use defense. Appellant raised the registration issue to support its assertion that it had adopted its mark in good faith and without knowledge of appellee's mark. In answers to interrogatories, in its Local Rule 56.1 statement opposing summary judgment, and in supporting papers, appellant also contended that appellant's use and promotion of the mark had been insufficiently public to establish rights in the mark, and that its failure to register was evidence of its inability to promote the mark. Indeed, appellant went so far as to assert that there was no evidence that appellee had promoted its services to investors at all.

In short, appellant used the failure to register not in support of an unlawful use defense, but only as evidence of its position that appellee's use of the mark in commerce had not been sufficiently public to establish service mark rights. Even if appellee had divined the alternative unlawful use theory (which it claims not to have

done), appellee undoubtedly would have concluded that appellant had strategically elected not to raise it, because the unlawful use defense directly conflicted with the failure to promote defense.

Appellant first raised the unlawful use defense in its memorandum of law opposing summary judgment. Acknowledging that its primary argument was that appellee had not promoted "any services to investors in the United States," appellant argued in the alternative that "[e]ven if" appellee had promoted its services, the mark was nevertheless unprotectable because "these activities were illegal."

Moreover, when it first raised the defense, appellant did not move to amend the answer. Only *after* Judge Chin rejected appellant's original defense, granted summary judgment, and issued an injunction, did appellant move—under the auspices of a motion for reargument[5]—to add the unlawful use defense. It is obvious why appellant, having just lost the case, would want to relitigate it under a new theory. However, such a strategy engages all the considerations—undue delay, bad faith, and prejudice to the opposing party—that would motivate a district court to deny the motion to amend. *See Krumme*, 143 F.3d at 88 (touchstones of discretionary authority to deny leave to amend are considerations of undue delay, bad faith, and prejudice).

Judge Chin did not abuse his discretion by denying a motion to amend that was made only after the case was lost. In affirming, we have not considered, and we express no view regarding, the merits of the defense or Judge Chin's discussion thereof.

### III. CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment.

---

5. Appellee does not contend that Judge Chin was powerless to grant the motion to amend under these procedural circumstances, and we have not considered that issue.