23-59 (L)
*In re Allergan PLC Sec. Litig.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand twenty-four.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

---

DEKALB COUNTY PENSION FUND, individually and on behalf of all others similarly situated,

> *Plaintiff-Appellant-Cross-Appellee,*

v.

ALLERGAN PLC, WILLIAM MEURY, MARIA TERESA HILADO, MATTHEW M. WALSH, BRENTON L. SAUNDERS, FRANCES DESENA, MARK MARMUR, PAUL BISARO,

> *Defendants-Appellees-Cross-Appellants.** 

Nos. 23-59 (L)
23-117 (Con)

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Plaintiff-Appellant-
Cross-Appellee:

ROBERT W. KILLORIN, Faruqi &
Faruqi LLP, Atlanta, GA (James M.
Wilson, Jr., Faruqi & Faruqi LLP,
New York, NY, *on the brief*).

For Defendants-Appellees-
Cross-Appellants:

JARED GERBER (Roger A. Cooper,
Abena Mainoo, Sabrina Singer, *on the
brief*), Cleary Gottlieb Steen &
Hamilton LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 12, 2022 judgment of the district court is **AFFIRMED**, and appellees' conditional cross-appeal is **DISMISSED** as moot.

DeKalb County Pension Fund ("DeKalb"), lead plaintiff in this putative securities-fraud class action against Allergan PLC and its executives (collectively, "Allergan"), appeals from the district court's grant of summary judgment in favor of Allergan. DeKalb and other former shareholders (collectively, the "Investors") alleged in their Amended Complaint that, between January 30, 2017 and December 19, 2018, Allergan made false and misleading statements in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission

2

Rule 10b-5, 17 C.F.R. § 240.10b-5. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Standard of Review

"The district court's grant of summary judgment is reviewed *de novo*, drawing all factual inferences in favor of the non-moving party." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 177 (2d Cir. 2001). "Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 343 (2d Cir. 1999).

## II. Section 10(b) and Rule 10b-5 Claim

To state a claim under Rule 10b-5, a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). For the reasons explained below, we hold that, with respect to each of the statements challenged by the Investors, the Investors have failed to show that

3

Allergan made a "false or misleading statement." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (internal quotation marks omitted). Finding this "foundational element" missing, we need not reach the merits of the district court's alternative holdings based on materiality and loss causation. *Id.*

For there to be liability under Rule 10b-5, there must be (1) a false statement, *i.e.*, "an actual *statement* . . . that is . . . 'untrue' outright," (2) a half-truth, *i.e.*, a "representation[] that state[s] the truth only so far as it goes, while omitting critical qualifying information," or (3) a "pure omission," *i.e.*, "a complete failure to make a statement" when "the corporation [had] a duty to disclose the omitted facts."[1] *Id.* at 239–40 (quoting *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 188–89 (2016)) (other internal quotation marks omitted). Notably, Rule 10b-5 "do[es] not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Rather, "[d]isclosure is required . . . only when necessary 'to make statements

---

[1] It bears noting that the question of whether Rule 10b-5 liability can stem from a "pure omission" is presently before the Supreme Court. *See Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022), *cert. granted sub nom. Macquarie Infrastructure v. Moab Partners, L.P.*, 216 L. Ed. 2d 1312 (Sept. 29, 2023).

made, in light of the circumstances under which they were made, not misleading.'" *Id.* (alterations omitted) (quoting 17 C.F.R. § 240.10b-5(b)).

On appeal, the Investors are limited to arguing that Allergan made three false or misleading statements to allegedly hide the fact that textured breast implants manufactured by Allergan were linked to a higher rate of breast implant-associated anaplastic large cell lymphoma ("BIA-ALCL") than "were the textured [breast] implants of other manufacturers." *See In re Allergan PLC Sec. Litig.*, No. 18-cv-12089 (CM) (GWG), 2022 WL 17584155, at *5 & n.3 (S.D.N.Y. Dec. 12, 2022).[2] We address each in turn, explaining why the Investors have not offered sufficient evidence of a false statement, half-truth, or pure omission.

### A. False Statements or Half-Truths

#### 1. Form 10-K Statements

The Investors first challenge the following statement found in Allergan's 2016 and 2017 Form 10-K filings:

From time to time[,] reports related to the quality and safety of breast[-]implant devices were published, including reports that have

---

[2] Manufacturers, including Allergan, offer smooth breast implants as well as macro- and micro-textured breast implants, which provide benefits such as better adherence to tissue and lower rates of movement.

suggested a possible association between anaplastic large cell lymphoma and breast implants, as well as negative reports from regulatory authorities in Europe related to a breast[-]implant manufacturer that is not affiliated with the Company.

J. App'x at 107 ¶ 134 (emphasis omitted), 114 ¶ 152 (emphasis omitted). The first half of this statement is a "determinate, verifiable" fact, *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184 (2015)), that is a "literal truth," *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013), since, at the time the 10-K statements were filed, there were already published reports about the quality and safety of breast implants and their possible link to BIA-ALCL. The second half of the statement is also "literal[ly] tru[e]," *id.*, given that European regulators had been reporting about a scandal involving another manufacturer, Poly Implant Prothèse, which used industrial-grade silicone in breast implants that ruptured and caused harm to patients.

The question becomes whether these literally true statements were actionable half-truths that, by virtue of "their context and manner of presentation," were misleading because they were "susceptible to quite another interpretation by

6

the reasonable investor." *Id.* (internal quotation marks omitted). The answer is no.

The theory of fraud the Investors are limited to on appeal is that Allergan failed to disclose that its *textured* breast implants, when compared to other manufacturers' *textured* breast implants, had a closer association with BIA-ALCL. *See In re Allergan*, 2022 WL 17584155, at *5 n.3 (noting that "[t]his case is not about the relative safety of smooth versus textured implants" but "whether Allergan failed to disclose that its textured implants were more closely associated with the disease than were the textured implants of other manufacturers"). But the challenged statement makes no reference to *textured* breast implants and states only that breast implants in general – *i.e.*, both textured and smooth ones – may be associated with cancer and that there were negative reports about a different manufacturer's breast implants, without specifying whether the products had smooth or textured shells. No reasonable investor would have interpreted these statements, considered as a whole and in context, to represent anything about the relative incidence rates of BIA-ALCL for Allergan's *textured* implants as compared to other manufacturers' *textured* implants.

### 2. Allergan Press Release

The Investors next point to a press release Allergan issued on May 29, 2018, which stated that "[t]he safety profile of Allergan's smooth and textured breast implants is supported by . . . more than a decade of U.S. and European clinical experience . . . as well as a large number of peer-reviewed and published studies. . . . BIA-ALCL has been reported with multiple different implant manufacturers."  J. App'x at 305–06.  Once again, this statement is not literally false given that scientific literature had been covering Allergan's textured- and smooth-implants operations in the United States and Europe for over ten years, and other breast-implants manufacturers had reported cases of BIA-ALCL. Moreover, we cannot say that this statement – which referenced both "smooth and textured breast implants," *id.* at 305 – would have been "interpret[ed]" by the "reasonable investor" to mean that Allergan's *textured* products were not more closely associated with BIA-ALCL than the *textured* products of other manufacturers.  *Kleinman*, 706 F.3d at 153.

### 3. ABC7 News Article

The Investors next target a written statement from Allergan – published as

8

part of a January 30, 2017 news story on ABC7 – indicating that "[a]ccording to the [Food and Drug Administration], BIA-ALCL has been reported in patients with textured breast implants from all manufacturers." J. App'x at 257. Like the statements discussed above, this statement is "determinate[ly]" and "verifiabl[y]" true, *In re Philip Morris*, 89 F.4th at 418, since, as the article itself notes, the FDA *did* receive reports of BIA-ALCL in connection with textured breast implants made by other manufacturers. The Investors nevertheless contend that Allergan's statement about the FDA reports created a misimpression that the risks of BIA-ALCL were not disproportionally high with Allergan's textured products, and thus the company had an obligation to correct that misimpression by disclosing information in its possession concerning the relative risks of BIA-ALCL among the various manufacturers of textured implants.

But affording due weight to the statement's "context" and "manner of presentation," we cannot say that a reasonable investor would have been misled. *Kleinman*, 706 F.3d at 153 (internal quotation marks omitted). Allergan's statement made no reference to the relative incidence rates of BIA-ALCL for breast implants made by different manufacturers. Additionally, the article itself

9

acknowledged the scientific community's limited understanding at the time as to whether textured breast implants from specific manufacturers could be tied to BIA-ALCL. *See, e.g.*, J. App'x at 256 (reporting that "when adverse events are reported to the FDA, the manufacturer isn't always known" and "[i]n many cases, a patient does not remember the name of the manufacturer"). For these reasons, we conclude that the statement cannot be considered an actionable half-truth, *i.e.*, "a statement that contain[ed] only favorable matters and omit[ted] all reference to unfavorable matters," *In re Vivendi*, 838 F.3d at 240 (quoting Restatement (Second) of Torts, § 529, cmt. *a* (1977)).

The Investors next fault the district court for supposedly weighing evidence regarding the association between Allergan's textured breast implants and BIA-ALCL, and for granting Allergan's motion for summary judgment without considering Investors' expert evidence on this issue. But the district court's grant of summary judgment – and our decision to affirm – in no way turns on the actual association between Allergan's textured products and BIA-ALCL, because, as explained above, the challenged statements were literal truths and could not be misleading since they did not even purport to speak to the relative BIA-ALCL

10

incidence rates for textured products. Consequently, "the testimony of the parties' experts [was] not necessary to grant Allergan's [summary-judgment] motion," *In re Allergan*, 2022 WL 17584155, at *1, and there is no need to consider whether there was a genuine dispute of material fact concerning the association between Allergan's textured products and BIA-ALCL.[3]

## A. Pure Omissions

Having found no actionable false statement or half-truth, we turn to whether Allergan can be held liable under a "pure omission" theory. *In re Vivendi*, 838 F.3d at 239. It is settled law that "silence" on the part of a company is "not misleading under Rule 10b-5" where there is no "duty to disclose" any omitted facts. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100–01 (2d Cir. 2015) (alterations omitted) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). Here, the Investors have cited no authority – and we are aware of none – that suggests Allergan had an independent duty to disclose any facts or opinions about

---

[3] The Investors also contend that the district court erred by not considering expert testimony concerning materiality and loss causation. But since the Investors have not shown that Allergan made a false or misleading statement, we need not reach the Investors' claims of error regarding the other Rule 10b-5 elements.

11

the association between its textured breast implants and BIA-ALCL. Indeed, the Investors *concede* that Allergan "would have had no independent duty to tell the market about Allergan's implants' [purported] closer association with BIA-ALCL." Invs. Reply Br. at 15 (emphasis omitted). They nevertheless insist that "such a duty arose when [Allergan] made the challenged statements that put this fact in play." *Id*.

To be sure, this Court has explained that "[e]ven when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014). But this principle is simply another articulation of our half-truth doctrine, which we have already addressed. As we observed above, it is clear that, with regard to the first two challenged statements, Allergan did not "speak[] on" the "topic" of textured breast implants. *Id.* As to the third, we cannot say that, by disclosing that "*the FDA . . .* reported [cases of BIA-ALCL] in patients with textured breast implants from all manufacturers," J. App'x at 257 (emphasis added) – but nothing further – Allergan was somehow concealing the "whole truth" about any cancer risks posed by its textured breast implants.

12

*Meyer*, 761 F.3d at 250.

### III. Section 20(a) Claim

Finally, we address the Investors' claim that Allergan is liable under section 20(a) of the Exchange Act because it controlled the alleged section 10(b) violators. Because we affirm the district court's dismissal of the Investors' claims under section 10(b) and Rule 10b-5, we must also affirm the dismissal of their claims under section 20(a). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (holding that because "a plaintiff must show . . . a primary violation by the controlled person" in order to "establish a *prima facie* case of control[-]person liability," a plaintiff who fails to demonstrate "any primary violation . . . cannot establish control[-]person liability").[4]

\*     \*     \*

---

[4] Since we affirm the district court's grant of summary judgment, we need not address Allergan's conditional cross-appeal. *See Weiss v. Nat'l Westminster Bank, PLC.*, 993 F.3d 144, 159 (2d Cir. 2021).

We have considered the Investors' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court and **DISMISS** as moot Allergan's conditional cross-appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14