NEWPORT ELECTRONICS,
INC., Plaintiff,

v.

NEWPORT CORPORATION,
Defendant.

No. CIV.A.3:99CV1463 JCH.

United States District Court,
D. Connecticut.

Aug. 1, 2001.

Robert J. Kaler, Robert A. Trevisani, William A. Zucker, Gadsby & Hannah, Boston, MA, Peter W. Peterson, Robert Curcio, DeLio & Peterson, New Haven, CT, for Plaintiff.

Michael A. Bucci, Jennifer K. Lawson, Day, Berry & Howard, Hartford, CT, Scott D. Baskin, Elizabeth Kimberly Penfil, Irell & Manella LLP, Newport Beach, CA, for Defendant.

RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDG-MENT ON SCOPE OF RELIEF [DKT. NO. 96]; DEFENDANT'S MOTIONS FOR SUMMARY JUDG-MENT ON (1) STATUTE OF LIMI-TATIONS AND LACHES [DKT. NO. 99]; (2) NO PRODUCT OVER-LAP OR LIKELIHOOD OF CON-FUSION [DKT. NO. 102]; (3) ANTI–CYBERSQUATTING CONSUMER PROTECTION ACT COUNTER-CLAIM [DKT. NO. 105]; AND ON DEFENDANT'S EVIDENTIARY OBJECTIONS AND MOTIONS TO STRIKE [DKT. NOS 144, 145, 146, 147, 148, 149, 156, 162]; AND ON PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON (1) ANTI–CYBERSQUATTING CONSUMER PROTECTION ACT COUNTERCLAIM [DKT. NO. 109]; (2) TRADEMARK INFRINGE-MENT AND UNFAIR COMPETI-TION [DKT. No. 114]; AND (3) SERVICE MARK INFRINGE-MENT AND UNFAIR COMPETI-TION [DKT. NO. 120]; AND PLAINTIFF'S MOTIONS TO STRIKE [DKT. NOS. 109, 134, 137, 174]

HALL, District Judge.

In this lawsuit, the plaintiff, Newport Electronics, Inc., asserts claims against the defendant, Newport Corporation, under section 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c); section 32 of the Lanham Act, 15 U.S.C. § 1114; the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a, et seq; and Connecticut common law for unfair competition, false designation of origin, trademark infringement and trademark dilution. The plaintiff seeks summary judgment on its trademark infringement, service mark infringement and unfair com-

petition claims. In support of its motion, the plaintiff argues that when the defendant began offering temperature and vibration control products, as well as on-line services at "www.newport.com" and OEM services under the name "Newport," it directly infringed on the plaintiff's trademark and service mark rights.

The defendant argues, in response, that there is no product overlap between the two companies and thus the plaintiff's rights to its trademarks and service marks have not been infringed. In addition, the defendant argues that, because the defendant has been offering the products in question since the early 1990's, the plaintiff's claims are barred by statute of limitations and laches. Finally, the defendant seeks summary judgment on a counterclaim brought under the Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. 1125(d)(1), in which the defendant alleges that the registration by the plaintiff of five domain names consisting of a shortened version of "Newport Corporation" and the registration of "newportoptics.com" was done in bad faith and in violation of ACPA. The defendant also seeks summary judgment on the scope of relief, arguing that the plaintiff is not entitled to injunctive relief which would enjoin it from using its current website, www.newport.com, or any other Internet domain name inclusive of the word "newport."

Both the plaintiff and the defendant also offer numerous evidentiary objections and motions to strike with regard to various exhibits and affidavits filed in connection with the motions for summary judgment.

For the reasons stated below, plaintiff's motions for partial summary judgment and summary judgment [Dkt. Nos. 109, 114, 120] are DENIED. Defendant's motions for partial summary judgment and summary judgment [Dkt. Nos. 96,99, 102, 105]

are DENIED. Plaintiff's motions to strike [Dkt. Nos. 109, 134] are DENIED. Plaintiff's motions to strike [Dkt. Nos. 137 and 174] are GRANTED in part and DENIED in part. Defendant's evidentiary objections and motions to strike [Dkt. Nos. 144, 145, 146, 147, 148, 149, 156, 162] are overruled and DENIED.

## I. FACTS

Newport Electronics is a Delaware Corporation, with offices in Stamford, Connecticut and Santa Ana, California. Newport Electronics offers a large variety of products for sale, including measuring, testing and laboratory equipment, meters, and industrial and mechanical equipment. The company holds a number of trademarks and service marks for the name "Newport." Newport Electronics offers products for sale through its website, "newportus.com."

Newport Corporation is a Nevada corporation, with its principal place of business in Irvine, California. Newport Corporation offers products for optical, motion, and automation systems for science and industry, including laser and optical technologies, vibration control and positioning equipment. Newport Corporation also holds trade and service marks for the name "Newport." Newport Corporation offers its products for sale over its website, "newport.com."

Newport Electronics initiated this lawsuit on August 3, 1999, when it filed a complaint alleging various trademark violations by Newport Corporation of the Lanham Act, CUTPA and Connecticut common law. On January 30, 2001, in its second amended answer, Newport Corporation asserted a counter-claim against Newport Electronics under the ACPA. The allegations contained in the complaint and in the counter-claim are the bases for the summary judgment motions that are the subject of this ruling.

## II. DISCUSSION

### A. Standard for Summary Judgment

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *See* Fed. R.Civ.P.56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *See Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *See Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Graham,* 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton* 202 F.3d at 134. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

## B. Defendant's Motion for Partial Summary Judgment on the Scope of Relief (Dkt. No. 96)

Defendant Newport Corporation brings a motion for partial summary judgment (Dkt. No. 96) in which it seeks to limit the scope of injunctive relief available to Newport Electronics. Newport Corporation asserts that Newport Electronics is not entitled to an injunction that:

(1) enjoins Newport [Corporation] from use or claim of ownership of NEWPORT.COM'; (2) enjoins Newport [Corporation] from using any Internet domain names inclusive of the mark NEWPORT'; or (3) orders Newport [Corporation] to vacate Internet websites inclusive of the mark NEWPORT, 'including the website having the domain name NEWPORT.COM.'

Newport Corporation argues that, even if Newport Electronics establishes a trademark violation, it will only be entitled to a narrowly drafted injunction prohibiting only those specific acts that constitute an infringement. An injunction cannot be ordered which would prevent Newport Corporation from using its website to offer products and services that are not in the realm of the infringement.

Newport Electronics argues, in response, that the injunction granted must be broad enough to prevent confusion and cannot be limited to a few specific products in question.[1] In addition, through the website "newport.com," Newport Corporation has offered on-line ordering services and OEM services, for which Newport Electronics asserts a service mark. If Newport Corporation is found to have infringed on Newport Electronic's trademarks or service marks, then use of the website must be enjoined because its use causes significant confusion and is the vehicle through which Newport Corporation offers the services in question. In addition, Newport Electronics argues that Newport Corporation's motion is premature, as the scope of injunctive relief cannot be determined until the extent of the infringement is ascertained.

■ The court could find no precedent as to whether a summary judgment motion is an appropriate vehicle to challenge the scope of injunctive relief before the extent of liability has been established. The court does find that, in this case, the motion is premature. Injunctive relief falls within the court's discretion. *Petroleum Exploration, Inc. v. Public Serv. Comm'n*, 304 U.S. 209, 218, 58 S.Ct. 834, 82 L.Ed. 1294 (1938) (granting of equitable relief "rests in the sound discretion of the court.") The court finds that the best exercise of its discretion will occur after all of the evidence is heard and the jury makes its finding as to liability. Once liability is determined, the court will then address the issue of the scope of equitable relief. Therefore, the court denies Newport Corporation's motion for partial summary judgment concerning the scope of injunctive relief.

## C. Defendant's Motion for Summary Judgment that Plaintiff's Claims are Barred by Statute of Limitations and By Laches (Dkt. No. 99)

Newport Corporation seeks summary judgment as to all of Newport Electronics claims, arguing that all claims under the Lanham Act and CUTPA are barred by a

---

1. The court notes that the plaintiff, Newport Electronics, did not file a 9(c)(2) statement in connection with its opposition memorandum (Dkt. No. 138). Newport Electronics appears to be relying on its submissions for other motions to substitute for the 9(c)(2) statement. Dkt. No. 138 at 2.

three year statute of limitations (Dkt. No. 99).

1. Motion to Strike

In connection with this motion, Newport Corporation objects to and moves to strike evidence submitted by Newport Electronics in support of its opposition memorandum to Newport Corporation's motion for summary judgment on statute of limitations and laches.

A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion. The moving party must be specific in regards to what it is seeking to have striken and must set forth reasons for why the materials should not be considered by the court. *See e.g. FDIC v. Meyer,* 781 F.2d, 1260, 1268 (7th Cir.1986). A party can make a motion to strike affidavits if they contain inadmissible hearsay or are not made on the basis of personal knowledge. *Hollander v. American Cyanamid Co.,* 999 F.Supp. 252, 255–56 (D.Conn.1998). A motion to strike is also appropriate if depositions contain testimony that contains hearsay, speculation or conclusory statements. A motion to strike can also be used to challenge documentary evidence which has not been properly authenticated. *See e.g., Dedyo v. Baker Engineering New York, Inc.,* 1998 WL 9376 at *4 (S.D.N.Y.1998).

In connection with its motion for summary judgment based on statute of limitations and laches, Newport Corporation makes a motion to strike the Second Supplemental Declarations of Milton Hollander and Michael Buskirk and the Declaration of William Drucker (Dkt. No. 162). In support of its motion, Newport Corporation argues that Newport Electronics has attempted to offer expert testimony "through the back door" by having lay witnesses offer expert testimony without being subject to the reliability standards of Rule 702 of the Federal Rules of Evidence. The declarations include opinions about the nature of the products sold by each company, the markets these products are sold in and the likely and potential confusion that will arise because of the alleged overlap of products. Yet, Newport Corporation argues, it is unclear what the assertions are based on and by what method each declarant reach his conclusions. Newport Corporation argues further that these opinions are based on specialized knowledge and cannot, therefore, be offered as lay testimony and that the declarations do not meet the standard of Rule 702 if offered as expert testimony. Finally, according to Newport Corporation, the declarations are "rife" with speculation and inadmissible hearsay and do not meet the standard of Rule 56(e). Newport Corporation argues that there is no foundation offered for the factual assertions made and cannot be based on the declarant's personal knowledge.

Newport Electronics argues in response that the declarations offered by these lay witnesses are admissible because they are based on knowledge acquired through their employment. Newport Electronics asserts that Rule 701 does not preclude lay witnesses from offering opinions "concerning matters within their industry experience or particularized field of knowledge," Opposition (Dkt. No. 179) at 3, provided that all of the information offered is based on personal knowledge or observations.

The court declines to weigh the reliability of these declarations under the standards of Rule 702 because these witnesses were not offered as experts. As lay witnesses, the court finds their declarations admissible. Hollander, the president of Newport Electronics, is able to testify to what products his company sells and what he understood Newport Corporation was selling. In addition, he can testify as to

actual confusion that he and his company have experienced as such information goes to his state of mind regarding his understanding of possible infringement of his company's marks. Such testimony stems from his own experience and is relevant to the issue of when Newport Electronics learned of the possible infringement and any actual confusion that exists. Drucker can testify as to his involvement with the patent registrations and about discussions with Newport Corporation about the French subsidiary. Drucker can certainly state that the meeting with Newport Corporation was the first time that "we realized a serious infringement problem had developed..."(Drucker Decl. ¶ 4), if it is offered, as the court reads it, to show his state of mind at the time and is not offered for the factual assertion that there was an infringement problem. Finally, Buskirk can testify to his knowledge of Newport Corporation's products and what he was aware of when he signed the trademark application for "newport.com." Such declarations go to his state of mind when completing the application and are relevant to the issue of what knowledge Newport Electronics' employees had, and when they had it, regarding Newport Corporation's products. Therefore, Newport Corporation's motion to strike the Second Supplemental Declarations of Milton Hollander and Michael Buskirk and the Declaration of William Drucker (Dkt. No. 162) is denied.

### 2. Motion for Summary Judgment

In its motion for summary judgment on statute of limitations and laches, Newport Corporation asserts that Newport Electronics had knowledge of the allegedly competing products prior to 1996. Therefore, the claims arose more than three years ago and are not timely. In addition, Newport Corporation argues that, even if Newport Electronics did not have actual knowledge three years ago, Newport Electronics had a duty to make due inquiry and is charged with having the information it would have received if a due inquiry had been made. Finally, Newport Corporation argues that the delay in filing the complaint prejudiced Newport Corporation as it was "lulled into continuing its marketing approach." Dkt. No. 100 at 7. Thus, the claims are barred by laches.

Newport Electronics argues, in response, that it did not have knowledge that Newport Corporation was offering the allegedly overlapping products until 1999. Newport Electronics also argues that the use of the website constitutes an ongoing violation so the statute of limitations does not apply. In addition, Newport Electronics argues that progressive encroachment on a mark cannot trigger laches. Newport Electronics also disputes that Newport Corporation will be prejudiced by restrictions sought because it had prior knowledge of a possible infringement when it deliberately encroached on Newport Electronics' mark. Newport Electronics also notes that laches does not necessarily bar injunctive relief. Finally, Newport Electronics argues that summary judgment would be inappropriate because there are material issues of fact in dispute regarding when it had knowledge of Newport Corporation's encroachment.

First, the court notes that this court has previously denied a summary judgment motion made by Newport Corporation regarding statute of limitations. *See* Endorsement Denying Motion for Summary Judgment (5/24/01) (Dkt. No. 43). On this motion regarding statute of limitations and laches, the court again finds that material issues of fact exists that bar the resolution of the defenses of statute of limitations and laches on summary judgment.

First, CUTPA has a three year statute of limitations. Conn. Gen.Stat. § 42–110a, et seq. While Newport Corporations asserts that Newport Electronics knew about the "allegedly overlapping products"[2] prior to three years ago, thus making its claims untimely, the court finds that there are issues of fact in dispute regarding when Newport Electronics knew about the sale of these products by Newport Corporation.

▉ There is no statute of limitations applicable to Lanham Act claims. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996); 5 J Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:33 (4th ed.2000). As such, to the extent Newport Corporation sought summary judgment on limitations grounds as to the Lanham Act claims, its motion fails as a matter of law.

▉ However, Newport Corporation has also argues that Newport Electronics' delay in filing both the CUTPA and Lanham Act claims caused it prejudice and that the claims are barred by laches. While the court recognizes that there is a duty of inquiry on the part of a senior mark user to monitor the use of its mark against infringers, Newport Corporation has not established any undisputed facts which would have triggered such a duty in Newport Electronics. Newport Electronics was aware of Newport Corporation for a number of years and that the two companies were offering different product lines. Clearly, here, it is possible that Newport Electronics was unaware of the new, allegedly infringing, use of the mark by Newport Corporation and, thus, could not be charged with the knowledge as there was nothing to prompt an inquiry on its part.

*See* 5 J Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:20 (4th ed. 2000) ("Changes in the quality or quantity of the allegedly infringing use can often excuse delay in suing.") (emphasis added).

In addition, Newport Electronics was not obligated to sue until the Newport Corporation's "acts first significantly impacted on [its] good will and business reputation." *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:19 (4th ed. 2000) The record is not clear when Newport Corporation actually began selling the allegedly overlapping products and when the sale of those products could have significantly impacted on Newport Electronics' business.

Finally, the court finds that Newport Corporation has not offered, beyond a bald assertion, any evidence that it was prejudiced by Newport Electronics delay in filing a lawsuit. There is no evidence in the record regarding Newport Corporation being "lulled" into any marketing approach due to Newport Electronic's inaction.

Therefore, due to the material issues of fact in dispute, Newport Corporation's motion for summary judgment on statute of limitations and laches (Dkt. No. 99) is denied.

### D. Defendant's Motion for Summary Judgment on the Grounds that there is no Product Overlap or Likelihood of Confusion (Dkt. No. 160)

Newport Corporation argues, in support of its third motion for summary judgment (Dkt. No. 160), that there is no overlap of

---

**2.** There are 17 products sold by Newport Corporation which Newport Electronics alleges overlap with products it sells. Newport Electronics argues that the sale of these 17 products by Newport Corporation violates its trademark. Newport Corporation disputes that the companies sell overlapping products.

products sold by themselves and Newport Electronics.

### 1. Motion to Strike

In support of its opposition to Newport Corporation's motion for summary judgment, Newport Electronics submits a motion to strike the affidavits of Lenonard Laub and David Stewart, the two experts that Newport Corporation has retained for this case (Dkt. No. 137). Newport Electronics argues that the reports of these experts do not satisfy the admissibility requirements of Rule 702 because neither expert provides an explanation of the methodology used to reach their conclusions, demonstrates whether it is an accepted methodology in their respective fields, or sets forth what reasoning underpins the conclusions they reach. Rather, Newport Electronics argue that the experts merely offer conclusory statements that are factually unsupported.

Newport Corporation argues, in response, that the Second Circuit has held that an affidavit of an expert is enough to satisfy Rule 56(e), even if the data is not attached, and that the court may look to depositions and reports to determine the admissibility under Rule 702. Newport Corporation asserts that expert testimony submitted on a motion for summary judgement should not be submitted to a vigorous Rule 702 analysis. In addition, Newport Corporation asserts that the expert opinions do satisfy the requirements of Rule 702. Finally, Newport Corporation argues that the motion to strike is ineffective because Newport Electronics does not specify which portions of the affidavits it objects to, but rather, attempts to strike them in their entirety.

 The Second Circuit has held that, "an affidavit stating facts upon which the expert's opinion is based satisfies Rule 56(e) even if the data supporting the facts is not attached." *Iacobelli Construction Inc. v. County of Monroe,* 32 F.3d 19, 26 (2d Cir.1994). However, that does not, as Newport Corporation contends, mean that a court should not decide whether an expert opinion is admissible on a motion for summary judgment. *See Raskin v. Wyatt Co.,* 125 F.3d 55,65–66 (2d Cir.1997) (holding that, a court performs the role of a gatekeeper for expert testimony, under *Daubert,* at the summary judgment phase as at trial); *see also, Cacciola v. Selco Balers, Inc.,* 127 F.Supp.2d 175, 180 (E.D.N.Y.2001) (applying Rule 702 and *Daubert* in assessing an expert's testimony submitting in support of a motion for summary judgment).

The reliability-related factors laid out in *Daubert* include a theory's testability, whether it has been the subject of peer review, the rate of error and degree of acceptance within the relevant scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also, Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (holding that the factors laid out in *Daubert* may be used by courts when evaluating non-scientific expert testimony and that, in the case of non-scientific expert testimony, the court performs the role of a gatekeeper).

 Here, the court evaluates the two expert's affidavits along with their reports and deposition testimony. Both experts present ample credentials (Laub Aff., Exh. 1, Stewart Aff., Exh. 1). However, Stewart, Newport Corporation's marketing expert, never outlines his methodology for reaching his conclusions. The court is unclear from his report and his testimony whether he ever performed a similar analysis before in the same manner and whether any method he did use is accepted by other experts who perform this type of

study. The court notes also that Stewart did not perform a survey regarding the marketing efforts of both companies. While not necessary, such a survey would have provided a foundation for some of the conclusions he reached which seem unsupported by evidence. The court finds that, based on the evidence before it, that Stewart's affidavit does not meet the admissibility requirements under Rule 702 and under *Daubert* and *Kumho*. Therefore, the court grants Newport Electronics motion to strike Stewart's affidavit (Dkt. No. 137). If Newport Corporation seeks to submit Stewart's expert testimony at trial, the issue would be appropriately addressed in a motion in limine, likely requiring a hearing.

■ While the court has some of the same reservations about the expert evidence submitted by Leonard Laub, the court declines to strike his affidavit. Laub articulates his methodology during his deposition testimony and provides a detailed account of his comparison of the products of the two companies. Laub's testimony deals with a side-by-side comparison of the products and, as such, does not need to account for a method by which to deal with outside forces, like customer reception, like Stewart's. Therefore, the court is less concerned about whether Laub's method conforms with others in the field. In addition, Laub does provide, in some detail, the method he used when assessing the products and the scientific foundation for his conclusions regarding what functions the products perform. The court believes that, if Newport Electronics seeks to exclude Laub's testimony from trial, it would be more appropriate to raise that issue in a motion to preclude the expert testimony, as to which the court could schedule a hearing with the expert testifying, as seems appropriate. Newport Electronics'

motion to strike the affidavit of Leonard Laub (Dkt.No.137) is denied.

### 2. Motion for Summary Judgment

In support of its motion for summary judgment, Newport Corporation argues, citing its expert Leonard Laub that, while both companies may sell some products referred to by the same name, these products serve fundamentally different purposes and are not fungible. In addition, it claims that it has been selling the seventeen products in question since prior to the time when Newport Electronics made statements to the Patent and Trademark Office ("P.T.O.") in support of trademark applications, in which it asserted that there was no product overlap between Newport Electronics and Newport Corporation. Finally, Newport Corporation asserts that there is no evidence of confusion or likelihood of confusion.

■ Newport Electronics argues, in response, that an application of the eight factors established in *Polaroid Corporation v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961), demonstrates that there are material issues of fact concerning a likelihood of confusion between the products of the two companies. Likelihood of confusion is the relevant test for ascertaining whether there has been trademark infringement. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir.1999) Newport Electronics also claims that the supposed "admissions" to the P.T.O. have been taken out of context and that Newport Electronics statements that there was no product overlap was based on the trademark registrations filed by both companies at the time and was based on the specific products addressed in the applications. All of the claimed admissions occurred prior to 1999 and Newport Electronics argues that it was not until May of 1999 that Newport Corpo-

ration filed a new application for trademark registration that, for the first time, included overlapping products.

■ The Second Circuit has long used the factors laid out by Judge Friendly in *Polaroid* as a guide to determining when a trademark has been infringed. The *Polaroid* factors are: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the good faith of the defendant in adopting the mark; (7) the quality of the defendant's product and; (8) the sophistication of the buyers. *Id.* at 495. These factors are not intended to be exhaustive, and the court must engage in a balancing of the factors to determine if there has been trademark infringement.

■ The court finds that there are substantial issues of fact in the record about whether there is, in fact, product overlap. While Newport Corporation's expert does offer information as to the various products, his report is not conclusive because a jury could disbelieve him. In addition, the various declarations of Hollander include testimony regarding product overlap between the two companies' product lines, in effect disputing the expert's findings and raising issues of fact regarding whether overlap had actually occurred.

In addition, Newport Corporation failed to address any of the other *Polaroid* factors in its motion for summary judgment. The court finds issues of fact in dispute regarding whether Newport Electronics will bridge or has bridged any gap in products. The court also finds that there are questions as to the instances of actual confusion cited by Newport Electronics and whether they demonstrate a confusion as to these two companies caused by new product overlap. The quality of the prod-

ucts of the two companies does not seem to differ substantially, although that is not completely clear from the record. However, the question remains of whether the comparable level of quality between the two companies' products makes the product lines difficult to distinguish and, thus, adds to the level of confusion. Finally, the court finds that there is dispute over whether the customers in question are sophisticated. Clearly, the companies that are purchasing products are technologically sophisticated, yet Newport Electronics has presented evidence of buying done by purchasing agents who, Newport Electronics posits, may not possess the same level of sophistication as the end users.

The court finds a number of issues of fact in dispute that impact on the *Polaroid* factors. Therefore, because there are material issues of fact in dispute, the court denies Newport Corporation's motion for summary judgment on no product overlap or likelihood of confusion (Dkt. No. 102).

Newport Electronics also makes a motion to strike the affidavit of Lee Blake (Dkt. No. 134). Because the court denied Newport Corporation's motion for summary judgment after considering all of the evidence, with the exception of Stewart's affidavit, the court denies Newport Electronics' motion to strike as moot. The court does recognize that Newport Corporation did not provide a well-prepared witness for its 30(b)(6) witness and this witness will be bound by his deposition at trial and will not be allowed to enlarge his testimony at trial regarding information he professed not to know during his deposition. *See e.g., Brookings Municipal Utilities, Inc. v. Amoco Chemical Co.,* 103 F.Supp.2d 1169, 1179 (D.S.D.2000). However, in light of the denial of the motion for summary judgment, the motion to strike is moot.

E. **Defendant's Motion for Summary Judgment on Anti–Cybersquatting Consumer Protection Act Counter–Claim and Plaintiff's Motion for Partial Summary Judgment on the Counter–Claim (Dkt. No. 106)**

In its motion for summary judgment on its counter-claim (Dkt. No. 106), Newport Corporation asserts that Newport Electronics registered five domain names consisting of a shortened version of "newport corporation"[3] and registered "newportoptics.com," all in bad faith and in violation of the ACPA. Specifically, Newport Corporation argues that the sites were registered solely for litigation purposes and to use as "bargaining chips" in the current litigation.

Newport Electronics argues in response (Dkt. No. 129), as well as in its own motion for summary judgment on the counter-claim (Dkt. No. 109), that it had a legitimate interest in preserving its trademark rights. Efforts to preserve those rights included prohibiting the use by others of its mark and any similar mark. Registering the domain names was, thus, in keeping with those efforts and was spurred by earlier litigation with another company it which it successfully acquired the domain names in question. Newport Electronics points to the large number of domain names already registered by the company to support the claim that the domain names in question are part of a larger effort at preserving its mark. In addition, Newport Electronics asserts that it did not act in bad faith, as defined by the ACPA, and that it believed that it was registering names for a fair and lawful business purpose.

■ The ACPA was passed to "protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 495 (2d Cir.2000)(quoting S.Rep. No. 106–140 at 4). The ACPA amends the Trademark Act of 1946 and provides:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; ....

15 U.S.C. 1125(d)(1)(A). There are three steps in the court's inquiry under the ACPA: (1) whether the mark is distinctive or famous; (2) whether the domain names are identical or confusingly similar to the mark and (3) whether the domain names were registered in bad faith

1. "Distinctive" or "Famous"

The first inquiry under the ACPA is whether a mark is distinctive or famous. "Distinctiveness refers to inherent quali-

---

**3.** Newport Electronics registered "newportcorp.org," "newportcorp.net," "enewport- corp.com," "enewportcorp.org," and "enewportcorp.net."

ties of a mark and is a completely different concept from fame." *Sporty's Farm L.L.C.*, 202 F.3d at 497. The parties do not seem to address this issue in their motions for summary judgment and, therefore, neither meets the burden of establishing that there are no issues of material fact regarding distinctiveness.

### 2. "Identical and Confusingly Similar"

The second inquiry under the ACPA is whether the domain names at issue are identical or confusingly similar to Newport Corporation's mark. Again, neither of the parties address this issue. Whether a domain name is similar is a factual inquiry, and, as neither party has met its burden on summary judgment to establish that no issues of fact remain, the question of whether the domain names are identical or confusingly similar to Newport Corporation's mark must be decided by the jury at trial.

### 3. "Bad Faith Intent to Profit"

The ACPA lists nine non-exclusive factors to be used when determining if a defendant has acted in bad faith. The factors are: (1) the trademark rights of the person in the domain name; (2) the extent to which the domain name consists of a the legal name of a person; (3) the person's prior use of the domain name in connection with the offering of goods or services; (4) the person's noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name, either for commercial gain or with the intent to tarnish the mark by creating a likelihood of confusion as to the source of the site; (6) the person's offer to sell or transfer the domain for financial gain without having used the domain name; (7) the giving of false or misleading information when registering the domain name; (8) the registration of multiple domain names which the person knows are identical or confusingly similar to the mark; and, (9) the extent to which the mark that has been incorporated in the domain name is distinctive and famous. 15 U.S.C. 1125(d)(1)(B)(i).

Each party presents a different analysis under these factors. Newport Corporation argues that Newport Electronics never used the websites and that each domain name is a shortened version of "Newport Corporation," a name that Newport Electronics never used. In addition, Newport Corporation points to the timing of the registrations, which occurred six months after the start of the litigation, as evidence that these names were acquired as bargaining chips. Newport Corporation asserts that Newport Electronics' explanation that it registered the names to protect its mark is without evidentiary support.

Newport Electronics argues in response that it has trademark rights in the name "newport" and that the domain names were just variations on the mark it already owned. Newport Electronics asserts that it never used the websites and, therefore, never diverted customers from Newport Corporation's website. In addition, Newport Electronics never attempted to sell the domain names for profit. Newport Electronics also points to the safe harbor provision of the ACPA and argues that it believed that registration of the names was fair use and lawful and should not, therefore, be held liable under the ACPA.

The court notes at the outset that this is not the typical cybersquatting situation where a person registers a famous mark or name and then attempts to extort profits from the owner of the mark by selling the domain name. *See e.g., Virtual Works, Inc., v. Volkswagen of America, Inc.*, 238 F.3d 264 (4th Cir.2001) Rather, this is a

case where both parties possess trademark rights to some portion of the domain names in question. The court also notes, however, the seemingly excessive number of domain names that Newport Electronics has registered. Penfil Aff., Exh. 13 (Dkt. No. 106) at 18–22.

When applying the factors to determine whether Newport Electronics acted in bad faith, the court finds that there are genuine issues of material fact that exist as to what Newport Electronics intended when it registered the sites. While the sites were never used to divert customers or to sell for profit, the names are direct variations on Newport Corporation's name and Newport Electronics presented no evidence that it ever used that name in business. Certainly Newport Electronics knew that it registered multiple names that could be considered confusingly similar to Newport Corporation's mark. There are material questions of fact as to whether Newport Electronics acted in bad faith, as defined by the ACPA, therefore making summary judgment motion inappropriate. Similarly, the court finds that whether Newport Electronics presents a viable explanation for its actions and is, therefore, covered by the safe harbor provision is an issue that rests on the credibility of Newport Electronics' evidence that must be assessed by the fact finder. Therefore, Newport Corporation's motion for summary judgment on its counter-claim (Dkt. No. 106) is denied and Newport Electronics' motion for partial summary judgment as to the counter-claim (Dkt. No. 109) is also denied.

Finally, the court denies Newport Corporation's evidentiary objections and motion to strike the exhibits submitted in support of Newport Electronic's motion for partial summary judgment on the counter-claim as moot in light of the ruling above (Dkt. No. 156).

### 4. Newport Corporation's Affirmative Defense of Fraud

Newport Electronics also filed, along with its motion for partial summary judgment on Newport Corporation's counter-claim for cybersquatting, a motion to strike Newport Corporation's affirmative defense of fraud. In response to that motion, Newport Corporation filed an objection, as well as a motion to strike the declaration of Michel, which was filed in support of Newport Electronics' motion to strike the affirmative defense of fraud (Dkt. No. 144).

Newport Electronics argues, in support of its motion to strike the affirmative defense of fraud, that there is no evidence that Michel had knowledge that any representation made in the 850 trademark application was false. Specifically, Newport Electronics argues that, when Michel submitted the trademark application for "newport.com" in 1996, he in good faith signed the application which stated that:

> no other entity has the right to use said mark in commerce, either in the identical form or in such a near resemblance thereto as to be likely, when applied to the goods or services of such other entity, to cause confusion or to cause mistake, or to deceive . . . .

While Michel knew that Newport Corporation had registered the domain name "newport.com," Newport Electronics argues that he was not aware whether the company had begun using it or that it was offering the "expanded product line" for sale through the website. Because Michel did not believe that there would be any confusion as to the registration of the trademark and because he did not have any knowledge or belief that a representation made in the 850 was false, Newport Electronics argues that Newport Corporation has not established the element of

*scienter* required to establish fraud. Finally, Newport Electronics asserts that Michel only learned of the website and the sale of the expanded line of products in 1999; because he believed that this use of the website infringed on his company's trademark rights, even if he had known about the website at the time of the filing, his good faith belief in the issue of infringement would have exempted him from disclosing the website to the P.T.O. because he believed that Newport Corporation did not, in fact, have any "legal right" to "newport.com."

Newport Corporation argues that Michel knew about the website and was, therefore, obligated to disclose that information to the P.T.O. Because he did not, the company should be found liable for fraud. Newport Corporation argues, in addition, that the court should strike Michel's declaration because it is irrelevant when and how he became aware of the website and the expanded product line and whether he believes he acted in good faith because he is charged with due inquiry regardless of whether he actually performed such an inquiry. Newport Corporation also objects to the sections of the declarations which discuss the content of the trademark application, as this violates the best evidence rule.

Newport Electronics argues, in response, that Michel's knowledge and beliefs are relevant to the issue of fraud and that his declaration is based on his personal knowledge. Further, because the trademark application is already in evidence, there is no basis for the best evidence objections.

 It is extremely clear to this court that there are material issues of fact remaining regarding Newport Corporation's affirmative defense of fraud. Given the confusion surrounding the issue of product overlap and the lack of clarity in the rec-

ord when products were offered, the court finds that there are, at a minimum, material issues of fact in dispute over what Michel could have learned in 1996, prior to filing the trademark application, that would have put him on notice of any rights Newport Corporation may have had in "newport.com." In addition, the court finds that there are material issues of fact that remain as to what Michel in fact knew at the time of the filing, whether he had a good faith belief that the filing was accurate, and whether Newport Electronics filed the application in order to protect its mark. Therefore, the court denies Newport Electronics motion to strike the affirmative defense of fraud (Dkt. No. 109).

Because the court has denied Newport Electronic's motion to strike the affirmative defense of fraud based on consideration of all the evidence filed in support of that motion, the court finds that Newport Corporation's objection to and motion to strike the Michel affidavit are moot. Therefore the objection is overruled and the motion to strike the declaration of Michel (Dkt. No. 144) is denied.

### F. Newport Electronics' Motion for Partial Summary Judgment of Trademark Infringement and Unfair Competition (Dkt. No. 114)

Newport Electronics seeks summary judgment regarding its claims for trademark infringement and unfair competition brought under the Lanham Act and CUTPA (Dkt. No. 114). In support of its motion, Newport Electronics argues that Newport Corporation has infringed its trademark by offering two sets of products, temperature controllers and vibration controllers, under the name "Newport." As the senior mark holder, as evidenced by its 111 trademark registration, Newport Electronics asserts that it has exclusive

rights to offer these products under the name "Newport."

Specifically, applying the factors established in *Polaroid* and laid out in this ruling, *see* supra at 213, Newport Electronics argues that Newport Corporation's infringement violates the Lanham Act and CUTPA because the overlapping products are likely to cause confusion. Newport Electronics argues that its mark is strong given that is arbitrary, not descriptive, it has been in use for a long time and the company holds an incontestable trademark in the name Newport. Newport Electronics asserts that, when viewing the two companies' marks singly, a customer would not be able to differentiate between the two companies. Newport Electronics argues that the specific products that are the subject of this motion are identical or closely related and it is likely that Newport Electronics will bridge any product gap that does exist. Newport Electronics points to several instances of actual confusion and asserts that there will likely be more confusion. Finally, Newport Electronics claims the actual purchasers of the products may not be sophisticated if they are purchasing agents or technicians and that the confusion will be amplified by the fact that both company offers high quality products.

In response, Newport Corporation argues that genuine issues remain as to whether there is any product overlap, whether Newport Electronics does offer temperature and vibration controllers and whether it holds a valid trademark for those products. Newport Corporation also asserts that there is dispute over who, in fact, holds the senior mark as to the products in question. Applying the *Polaroid* factors, Newport Corporation argues that the two companies do not compete in the same market, but serve different customers with different needs. Newport Corporation cites Newport Electronics' applications to the P.T.O. as evidence of its "admission" that the companies' products do not overlap. Newport Corporation questions the strength of Newport Electronics' mark and argues that the two marks are not identical or even substantially similar. Newport Corporation asserts that Newport Electronics is unlikely to bridge any product gap. Newport Corporation disputes that there has actually been any instances of confusion and given the sophistication of the consumers and their experience with the products' performance, asserts that there is unlikely to be any confusion in the future. Finally, Newport Corporation argues that it has acted in good faith and has not attempted to divert customers from Newport Electronics' website.

 To prevail on an infringement claim, a plaintiff must establish that it possesses a valid, legally protected mark and that defendant's subsequent use of a similar mark is likely to create confusion as to the origin of the product at issue. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 344 (2d Cir.1999).

 The court finds that there are material issues of fact in dispute regarding the alleged trademark infringement. First, there is dispute over whether Newport Electronics' 111 trademark registration actually covers the products in question. In addition, there is substantial confusion in the record over whether or not the products overlap or are unrelated products with the same names. Given the uncertainty over the product overlap, questions remain whether Newport Corporation was acting in bad faith when it began offering its new line of products. In addition, the evidence submitted by Newport Electronics to support the assertion that there has been actual instances

of confusion is inconclusive as it is unclear whether the confusion came about because of the supposedly overlapping products. Issues of fact also remain as to the actual sophistication of the consumers and whether greater sophistication actually would cause less confusion or more given the possible tendency of high-end users to assume affiliation between the two companies' products. Finally, the confusion over what products are being offered by the companies, and when they were first offered, raises questions regarding who is the senior holder of the trademarks in question. Given these issues of fact in dispute, Newport Electronics' motion for partial summary judgment of trademark infringement and unfair competition (Dkt. No. 114) is denied.

In connection with Newport Electronics' motion for partial summary judgment, Newport Corporation filed a motion to strike the primary and supplemental declarations of Hollander and Buskirk (Dkt. No. 146). Newport Corporation also submits evidentiary objections as to the declarations and supplemental declarations of Hollander (Dkt. No 145) and Buskirk (Dkt. No 149). Finally, Newport Corporation offers evidentiary objections and a motion to strike the exhibits submitted in support of Newport Electronics motion for partial summary judgment for trademark infringement and unfair competition (Dkt. No. 148). Because the court denies Newport Electronics' motion for partial summary judgment based on consideration of all the evidence filed in support of that motion, the court finds that Newport Corporation's evidentiary objections and motions to strike are moot. Therefore, Newport Corporation's motions to strike the declarations of Hollander and Buskirk (Dkt. No 146), its evidentiary objections to the declarations and supplemental declarations of Hollander (Dkt. No 145) and Buskirk (Dkt. No 149) and its evidentiary objections and motion to strike exhibits (Dkt. No. 148) are overruled and denied.

## G. Plaintiff's Motion for Partial Summary Judgment Finding Service Mark Infringement and Unfair Competition (Dkt. No 120)

Newport Electronics seeks summary judgment as to its claims for service mark infringement and unfair competition brought under the Lanham Act and CUTPA (Dkt. No. 120).

### 1. Motions to Strike

In support of its motion for partial summary judgment, Newport Electronics submits a further motion to strike paragraphs 2–5 and 7–9 of the Blake affidavit, the exhibits that Newport Corporation submitted but that the 30(b)(6) witness could not authenticate, and the Hewitt affidavit (Dkt. No. 174). Newport Electronics argues that Newport Corporation did not produce a knowledgeable 30(b)(6) witness and is now trying to insert evidence on which Newport Electronics was unable to depose him. Hewitt's affidavit, Newport Electronics argues, conflicts with Blake's deposition and the court should strike Blake's affidavit because Rule 30(b)(6) does not permit a party to contradict or alter its 30(b)(6) testimony. In addition, Newport Electronics argues that the Hewitt affidavit contradicts Hewitt's previous testimony in his deposition, specifically on the issue of Newport Corporation's change in logo and name and registration of its domain name.

Newport Corporation argues that Rule 30(b)(6) does not require a witness to be omniscient and that Newport Electronics failed to ask Blake the right questions during the deposition and that Hewitt's and Blake's affidavits merely supplement the information presented during their de-

positions. Newport Corporation also argues that Rule 30(b)(6) does not prevent admitting documentary evidence, especially in this case where all the documents in question have been previously offered as exhibits. Finally, Newport Corporation argues that the motion to strike is procedurally defective because it seeks to strike the evidence in its entirety instead of stating with precision which sections are objected to.

The court grants the motion to strike the Blake affidavit (Dkt. No. 174) as to ¶¶ 2, 5 and 8 and denies the motion to strike as to ¶¶ 3, 4, 7 and 9. Blake was asked in his deposition about the marketing and sales endeavors of Newport Corporation in the years 1977–1978 but was unable to answer. However, in his affidavit he testifies about trade shows that Newport Corporation allegedly attended during the years in question. In addition, Blake states in his deposition that he has no knowledge about the use of metatags on Newport Corporation's website (Blake dep., Vol. II, 335:8–13; 336:4–337:12), yet in his affidavit, ¶ 8, he offers information regarding the use of the metatags "controller" and "electronics" on the website. Finally, in his deposition Blake is unable to answer questions about the geographic scope of Newport Corporation's sales prior to his employment with the company (Blake dep., Vol. I, 75:24–76:9) yet in his affidavit, ¶ 5, he discusses the use of nation-wide sales representatives, by the company, since the 1980s, well before his employment with the company.

The settled law in the Second Circuit is that "a party may not create a material issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (1997). Here, Blake's affidavit contradicts statements in his deposition. Newport Corporation received notice of the topics on which Newport Electronics wished to depose a 30(b)(6) witness; Blake was not at liberty, therefore, to delay reviewing information on those topics until after the deposition and, thereby, submitting information in his affidavit which contradicts statements in his deposition regarding his lack of knowledge on various topics. Therefore, the court strikes those portions of the affidavit. The court finds, however, that direct questions were not asked of Blake, during his deposition, regarding the topics discussed in ¶¶ 3, 4, 7 and 9 of his affidavit and, therefore, the affidavit is not contradictory, but rather, supplemental. Therefore, the court denies Newport Electronics' motion to strike as to those portions of the Blake affidavit.

In addition, the court grants Newport Electronics' further motion to strike as to the Hewitt affidavit. Here, the Hewitt affidavit is submitted in opposition to a motion for summary judgment and includes testimony regarding his personal knowledge of and involvement in the changing of the name and logo of his company or the acquisition and use of the website. Hewitt Aff. ¶ 3–5. Thus, the affidavit directly contradicts his deposition testimony in which he claimed no knowledge of or participation in the logo and name change and the website. Hewitt Dep. Vol. I, pp. 55:6—57:2; 126:4—127:1; 127:25—128:8. Because a party cannot offer contradictory information in support of a motion for summary judgment merely to create issues of fact, the court grants Newport Electronics' further motion to strike as to Hewitt's affidavit (Dkt. No. 174).

Finally, Newport Electronics seeks to exclude exhibits which were submitted in support of Newport Corporation in opposition to Newport Electronics' motion for summary judgment. Newport Electronics

argues that they should be excluded because they could not be authenticated by the 30(b)(6) witness. The court did not rely on the exhibits when deciding the motion for summary judgment so it declines to reach the substantive issue of whether these exhibits were submitted in violation of Rule 30(b)(6) and without the proper authentication. Therefore, the court denies the motion to strike the exhibits because it is moot in light of the ruling above.

### 2. Motion for Summary Judgment

In support of its motion for summary judgment, Newport Electronics argues that it holds service marks for on-line ordering services and OEM services and that Newport Corporation infringed on those marks when it began offering online sales through its website and OEM services to its customers. While Newport Electronics concedes that its marks are not yet incontestable, it argues that the registration with the P.T.O. is *prima facie* evidence of validity. Because of this evidence, Newport Electronics argues that the burden shifts to Newport Corporation to rebut the presumption of the mark's validity. Instead, Newport Corporation has chosen to defend on the issue of likelihood of confusion.[4] Applying the *Polaroid* factors, Newport Electronics argues that inquiries on the web have been misdirected to Newport Corporation's website because of its use of metatags relevant to Newport Electronics products, that there is an overlap of services being offered and that there have been actual instances of confusion.

In addition, Newport Electronics asserts that Newport Corporation acted in bad faith by ignoring the obligation of the junior user to avoid confusion, by mimicking Newport Electronics' slogans, and by actively and knowingly encroaching on Newport Electronics' product field, particularly through its website. Newport Electronics argues that the warnings from French advisors as to possible trademark infringement alerted Newport Corporation to possible infringement problems.

In response, Newport Corporation argues that, when Newport Electronics registered its service marks, in three instances Newport Corporation's previous registrations were a bar and Newport Electronics had to state that it did not compete with any of Newport Corporation's services in order to get the registration approved. Second, Newport Corporation asserts that Newport Electronics' marks can be challenged because the services in question are not valid services and are not covered by the service marks. In addition, Newport Corporation asserts that Newport Electronics is not the senior user when it comes to provision of these services and these service marks. Finally, Newport Corporation argues that there is no likelihood of confusion because online ordering and OEM services are product specific and, because there is no product overlap, there is no service overlap. Newport Corporation also asserts that evidence of confusion from the issues in France is irrelevant, as is the evidence regarding the NMW trade show because

4. During oral argument, Newport Corporation asserted that it did attack the validity of Newport Electronics' marks in its Twelfth Affirmative Defense, submitted with its Second Amended Answer (Dkt. No. 85). However, the Twelfth Affirmative Defense mentions "trademarks" and the registration numbers listed do not include the service mark registration numbers which pertain to the registrations that are the bases of Newport Electronics' motion for summary judgment. Therefore, the court does not consider the Twelfth Affirmative Defense an effective attack on the validity of Newport Electronics' service marks.

222

Newport Corporation did not attend that show.

■ A service is mark is "any word, name, symbol, or device, or any combination thereof" which is used to identify and distinguish the services of one person from another. 15 U.S.C. § 1127. The standards for determining infringement for a service mark are essentially the same as that for a trademark. *Murphy v. Provident Mutual Life Insurance Co. of Philadelphia*, 923 F.2d 923, 927 (2d Cir.1990). To prevail on an infringement claim, a plaintiff must establish that it possesses a valid, legally protected mark and that defendant's subsequent use of a similar mark is likely to create confusion as to the origin of the product at issue. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 344 (1999).

■ The threshold question in this case is whether Newport Electronics has a valid mark in so far as it is actually performing valid services. While the court recognizes that a certificate of registration with the PTO is *prima facie* evidence of the validity of the mark, that presumption can be rebutted. *Id.* at 345. The court finds that there are issues of fact regarding whether the OEM services and the online ordering services, offered by Newport Electronics, are distinct from the general sales of Newport Electronics' goods.

Even if services are offered and, thus a service mark may be registered, there remains material issues of fact in dispute over what services the service marks actually cover and whether Newport Electronics can claim infringement for general online ordering and OEM services provided by Newport Corporation or just infringement regarding services in relation to the allegedly overlapping products. Given the issues of fact remaining regarding product overlap, whether Newport Electronics can claim service mark infringement is an open question. Finally, issues remain regarding whether there is likely to be confusion over the offering of these services by these two companies. Specifically, the application of the *Polaroid* factors demonstrates that there are issues of fact over the competitive proximity of the companies and whether Newport Corporation has used its website inappropriately to divert customers away from Newport Electronics' services. Therefore, because material issues of fact remain in dispute, the court denies Newport Electronics' motion for summary judgment on the claim of service mark infringement and the related claim of unfair competition (Dkt. No. 120).

Newport Corporation submits evidentiary objections and a motion to strike the evidence submitted by Newport Electronics in support of its motions for summary judgment. Specifically, Newport Corporation seeks to strike portions of the Hollander declaration of March 22, 2001, the second supplemental Hollander declaration of March 22, 2001, the Michel declaration of March 15, 2001, the Drucker Declaration of March 23, 2001, the supplemental Buskirk declaration of April 5, 2001, and various exhibits (Dkt. No. 161). Because the court denies Newport Electronics motion for summary judgment on service mark infringement based on consideration of all the evidence filed in support of that motion, the court finds Newport Corporation's objections and motions moot. Therefore the court overrules and denies Newport Corporation's evidentiary objections and motions to strike.

Finally, the court denies Newport Corporation's evidentiary objections and motions to strike the exhibits submitted in support of Newport Electronics' motion for summary judgment as to service mark infringement and unfair competition (Dkt. No. 147). Again, the court finds these objections and motions moot.

## III. CONCLUSION

For the reasons stated above, plaintiff's motions for partial summary judgment and summary judgment [Dkt. Nos. 109, 114, 120] are DENIED. Defendant's motions for partial summary judgment and summary judgment [Dkt. Nos. 96, 99, 102, 105] are DENIED. Plaintiff's motions to strike [Dkt. Nos. 109, 134] are DENIED. Plaintiff's motions to strike [Dkt. Nos. 137 and 174] are GRANTED in part and DENIED in part. Defendant's evidentiary objections and motions to strike [Dkt. Nos. 144, 145, 146, 147, 148, 149, 156, 162] are overruled and DENIED.

**SO ORDERED.**